All right, ladies and gentlemen, we're ready for Silha v. ACT. Mr. Drury. Good morning, Your Honor. Larry Drury for the plaintiffs. Simply put, Your Honors, and considerably abbreviated, to share information or send information is not the same as selling the information, which is at the heart of the allegations of the complaint before the court. The harm to the plaintiffs and the punitive class, although we never did get the class of certification, is that the promise was to send the information to certain institutions, colleges, or other organizations. And the pecuniary harm is that instead of just sending it or sharing it, they sold it. As part of the record, the court can note that there's a license agreement in the record from ACT, which clearly sets forth that they, in fact, are going to benefit from the sale of the information from these youngsters who are generally high school students and of minor age who apply to go to college. Hopefully, as part of their education, they will learn about integrity and telling the truth. But what happened here is that these defendants were not forthright with those persons. Could you walk me through how Ms. Szilla could have made money with her personal information? In other words, colleges pay for the information because they want to identify students who might be interested in applying to that college. So, if Ms. Szilla contacted the University of Chicago admissions office and she said, Hello. If you pay me 33 cents, I'll give you my address and demographic information. Do we think it at all plausible that the University of Chicago or any other school would be interested in this transaction? Well, first, Your Honor, this matter doesn't come before you on a 12b-6, which plausibility and the merits of the case would be before the court. This matter comes before the court on a 12b-1 as to whether or not the plaintiffs had standing to bring the suit in the first place. In answer to your question that under the circumstances, these plaintiffs were lied to, plain and simple. They were not told that their information, their personal information, was being sold to third parties at that then rate of 33 cents per sale. And there's like a million people or applicants for this in one year alone at some $330,000. These defendants are making millions of dollars off of these youngsters who want to apply to the school. So they have a market for it. The market has been set by these defendants at 33 cents each. They could have sold their information to the defendants and then let the defendants go ahead and sell it to these colleges and other undescribed organizations to whom they benefit from the sale. But you concede, I take it, that at the time of testing, the plaintiffs are willing to give their information away for free, correct? At the time of testing for the test, yes, but not actually for free, Your Honor, because they have to pay for taking the test, which is a separate issue. No, no, but they're willing to give their information away. They're willing to give their information in order to take the test. They have to take the test to apply to most colleges. There's almost a contract of adhesion here. They have no choice, and if they want to go to the college, they must take these defendants' test. But what they don't tell any of the parties in the case is they're turning around and selling it, and they have a license agreement, a written license agreement, with these different institutions to benefit off of the selling of the information of these plaintiffs. Nowhere do they disclose it. How hard would that have been, Judge? It's your claim that if the testing companies had said, look, if you check this box, we'll share your information with colleges, and by the way, we will get $0.33 for doing so, then Ms. Silla and the other plaintiffs would have demanded a cut of the $0.33. Is that what you're saying? I'm saying very likely that they might have, but we never got to that point. We're only on the four corners of the complaint, and what the complaint says has to be accepted as true. The allegations of fact, at least, must be accepted as true. And if they had been given that opportunity to share in the $0.33 that they were getting, it's just as likely that they would as they might not have. But they were never given that opportunity because these defendants were not forthright with these youngsters. Look, it's true that you are not required to present any evidence at this stage, but you do have to assert a plausible theory. What is the evidence that any student anywhere would have said this? Is there any? Well, Your Honor, we never got to the point of discovery, obviously. I think the allegation that the complaint is, and I know that it's in both the complaint and the amended complaint, which we were denied leave to file, that they had the ability to sell. They would have sold it, but they never had that opportunity to sell it because it was not disclosed by these defendants. But is there any evidence anywhere in this world that any person ever, in the history of administration of the SAT and the ACT, has wanted to sell their information to a college? I don't know the answer to that, Your Honor, but the point is that none of us know that because they never put that opportunity out there to give them the ability to go ahead and sell it because they didn't know that's what these defendants were doing. So I don't know the direct answer to your question whether or not in the history of the administration of these tests that occurred. Maybe discovery would disclose it down the road, but at this stage of the proceedings, I don't know the answer to that, Your Honor. But aren't the plaintiffs, by definition, people who are interested in applying to college? I mean, isn't it just as likely that they might pay 33 cents for the service? Well, these are people that are applying to the college. They need to take these examinations in order to have their applications reviewed to see if they will be accepted to the college. But it's clear and it's undisputed that these defendants never said that they were going to sell the information. They used the word share. They used the word send. They haven't denied it, and they've never given any money, obviously, to these plaintiffs or the putative class, and the position they've maintained, according to the record at this time, is we haven't disclosed it and we're doing a great thing for these students by having other universities look at their applications and maybe they'll consider actually accepting some of these students. Well, suppose I give money to a food bank in Chicago, and that food bank shares my name with other food banks in Chicago who pay me a small amount of money for access to the names of people most likely to give. Has the food bank reached a contract, in your view? Yes. Okay. Well, that's your next case. Maybe you are, but I see I'm going into my rebuttal time, so I would like to save a few minutes for the rebuttal. All right. Thank you. Thank you. Mr. Hochman? Good morning, Your Honors. First, may it please the Court, Rob Hochman for the College Board. Judge Robner, in answer to your question, there is no reason to believe that anybody could ever get paid for this. And, in fact, what we heard today is actually even a little bit different than not only what was pled, but what was argued in the briefs. The theory of the case is not that the plaintiff should have been given an offer by the testing agencies to share in some of the 33 cents. That's not the theory of the case. The theory of the case is that because they didn't know, they weren't in a position to ask for a piece of the 33 cents. What percent of students opt out of the information sharing program? We don't know at this stage of the case. I don't know the answer to that question. I know it's a fairly robust program because I know that the testing services are, in fact, very proud of the extent to which these programs provide opportunities, especially for lower income and students that are not well tied into the higher education system, to really be introduced to scholarship opportunities and various educational institutions that might, in fact, be interested in that. You know, the district court described your program as an opt-out program, but the one you display at page three of the brief, it looks like an opt-in. Has it changed? No. The way I believe it works is you press yes or no, and if you don't press yes, if you don't actually push the yes, your information is not included in the program. So that's what we mean by opt-in. If the yes is not checked, we don't include you. But how do you get into college if you don't? Oh, so this information that's being shared here is not the information, it's not the test score. The test score is a different thing, and, in fact, this doesn't include, we don't send the test score as part of this program. What we are sending as part of this program is just some very basic information, name, address. We don't send the social security number. We don't send personally sensitive information, including test scores. We'll send the GPA of the student only to the extent that the student self-reports it, and it's only that information that goes. Also, what the school sees, if you're included, is not the actual test score of the student, but the school can ask for that kind of information for people who scored within a certain range. So we don't give them the specific test, but if they get your name, then they know you scored within the range that the school has identified. It's $0.33 per student, right? Or is it $0.33 per student per college? I think the allegation is the latter, Your Honor. Per student, per organization. Per student, per college. That's the allegation. That, of course, has not been tested at this point. So if I apply to 1,000 colleges? Well, it's not, again, the money is not tied to who you apply to. The money is tied to the organizations that request it, just request the information. Was there any de minimis discussion with regard to de minimis? In other words, we're only talking about $0.33. Well, I mean, on an individual basis, that's true, but, of course, this is a putative class case. Well, putative class, but it's not a class yet. That's for sure. But, you know, the Class Action Fairness Act, I mean, does permit this kind of case to be brought in federal court. I mean, that's the basis of jurisdiction here. Well, I just asked if you agreed. Yeah, no, well, I think it's fair to say it occurred to us, but we didn't think there was anywhere we could go with that. You know, I don't want to use up too much of your time. You've had a long morning. We think this is a fairly straightforward case. Plaintiffs wanted us to send their personal information to educational organizations, and that's exactly what we did. They don't claim we failed to do anything they asked us to do or that we took anything more from them that they were willing to give. Indeed, we took nothing. The information was shared, was sent. They got what they wanted to be connected with these educational organizations for free. Their claim of injury is not that they were harmed. It's that we were benefited. But our gain is not their loss, and it's really just as simple as that. This isn't identity theft. This isn't data breach. This is straightforward. Plaintiffs got what they wanted. They suffered no harm and will suffer no harm going forward. And unless the court has further questions, I'm more than happy to yield my time so that you all can get out of here sooner. Good. Good morning. May it please the Court, my name is Mike Reces, and I'm here today on behalf of ACT as defendant appellee. This appeal presents a straightforward application of standing. If anything, plaintiffs have made your job easier by the way they pled their complaint and the issues they have chosen to raise on appeal. Plaintiffs did not plead that they lost anything of monetary value from the sale of their personal identifiable information. And what they got in return was useful information from a variety of organizations about educational, scholarship, and financial aid programs that benefit college-bound students. Plaintiffs could not show that they had been deprived of the value of their information unless they also set forth facts, well-pleaded facts, plausibly, I emphasize the word plausibly, alleging that they had the ability to sell their own information, which is going I think to the question that Judge Rovner began the argument with, or that the defendants somehow prevented plaintiffs from entering into a value-for-value transaction. They never made that allegation in the original complaint. Nowhere did they make that allegation. They chose to stand on their complaint in response to our 12b1 motions. Instead, they made the allegation for the first time when it was untimely, as well as implausible, after judgment, and they have not raised the issue on appeal. Accordingly, they have forfeited any argument about the district court, denying them leave to amend. And as far as what they did plead, we join the co-defendant's argument. And if you take away nothing else from my argument right before the lunch hour, I'd ask you to remember this, that injury in fact requires more than an allegation that we gained monetarily from the sale, but standing also requires plausible, not speculative, allegations that plaintiffs lost something of value. This they never pled before or after judgment. For all of the reasons set forth in the briefs and the argument today, we ask you to affirm. Thank you. If there are no further questions. Thank you, counsel. Mr. Dury, how much time does he have? You have three minutes, Mr. Dury. Thank you, Your Honor. Your Honor, I initially referred to when the license agreement of ACT and counsel's arguments for both defendants that plaintiffs are not losing anything by the sale of their information. This is document 32-3 as part of the record, and in paragraph 2 it states compensation and payment terms. Licensee agrees to pay ACT at ACT's prevailing rate for the information provided. The licensee shall pay ACT for the use of the information within 30 days of receipt of an invoice from ACT. I didn't get a copy of the SAT license agreement, I assume, but don't know that it's very much the same. That is not part of the record. But there is no dispute that they are being compensated. Counsel states that we didn't raise anything in our briefs, but our briefing chief with respect to the question of leave for filing an amended complaint is at page 10F. With respect to counsel's argument that we made no allegations in the complaint as to the sale of the information and thereby there being damages, which is also in the prayer for relief for each count, I would refer the court to page 4, paragraph 17, page 9, paragraphs 41 and 45, page 10, paragraph 50. These allegations are also in the amended complaint. Simply put, we never had an opportunity to present our case. Judge St. Eves dismissed us based on 12B1. And as far as satisfying whether or not there is, in fact, an injury, in fact, yes, there is. Is it concrete? Is it a particular injury? Is it traceable to these defendants and is it redressable by this court? The answer to each and every one of these questions is yes, the defendants were not forthright with the plaintiffs in their nice form, which must be 15 pages long. They could have said, as Judge Rovner mentioned before, by the way, we're also selling your information at 33 cents. At that time, it's probably more now. And let the parties who are taking the test, in most cases who are minors, make that decision. Thank you. Thank you, counsel. Thanks to all counsel. The case will be taken under advisement.